UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Timmy J. Reichling,

    Plaintiff,      Case No. 22-cv-81 (JRT/LIB)

v.

            **REPORT AND RECOMMENDATION**

T.J. Fikes, et al.,

    Defendants.

---

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636, and upon Defendants' Motion to Dismiss. [Docket No. 49]. On December 15, 2022, the Court took Defendants' Motion under advisement on the parties' written submissions. (Order, [Docket No. 57]).

For the reasons discussed herein, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 49], be **GRANTED**.

**I. Procedural History and Factual Background**

Plaintiff Timmy Reichling (hereinafter "Plaintiff") was convicted by the Western District of Wisconsin for Production of Child Pornography in violation of 18 U.S.C. § 2251 (a) and (e). (Declaration of Shannon Boldt ("Boldt Decl."), [Docket No. 52], at ¶ 4). Plaintiff was sentenced to 300 months of imprisonment. (Id.). Petitioner began serving his sentence at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone"). (Petition, [Docket No. 1]).

While detained at FCI-Sandstone, Plaintiff initiated the present case on January 13, 2022, by filing a writ of habeas corpus. (Petition, [Docket No. 1]). Plaintiff alleged that his First and

Fourteenth Amendment rights were being threatened by a proposed facility transfer. (Id. at p. 2). Plaintiff also attached to his Petition a copy of an informal resolution form purportedly filed with FCI-Sandstone on January 5, 2022, complaining about of his referral to a different facility after being found in possession of certain photographs. [Docket No. 1-1]). Plaintiff also filed a Motion for Preliminary Injunction on January 27, 2022, seeking to prevent his transfer from FCI-Sandstone. [Docket No. 7, at p. 2].

Based on the allegations raised in the Petition, the Honorable Hildy Bowbeer granted Plaintiff leave to convert his habeas proceeding into a civil action. (Order, [Docket No. 8]).

Consequently, on February 22, 2022, Plaintiff filed the operative Amended Complaint[1] pursuant to 28 U.S.C. § 1983 alleging that Defendants Federal Bureau of Prisons, T.J. Fikes, Dr. Ann Lavalley Wood, Dr. Lauren Bradel-Warlick, Ryan Zaudtke, Derek Drillings, Jobie Best, Tasha Scullard, Garret White, and Trevor Radzwicz ("Defendants") were threatening to violate his First and Fourteenth Amendment rights by preparing to wrongfully transfer him to a Sex Offender Management Program ("SOMP") for repeatedly possessing photographs of young appearing women deemed by facility psychologists as "risk-relevant behaviors."[2] (Amended Complaint, [Docket No. 9]).

---

[1] For the purposes of the present motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the Amended Complaint as true and construes them in the light most favorable to Plaintiff. See Stodghill v. Wellston Sch. Dist., 512 F.3d 472, 476 (8th Cir. 2008).

[2] A review of the docket sheet in this matter reveals that a summons was returned unexecuted for "Mr. Johnson" because there was not enough information to locate him. [Docket No. 30]. Accordingly, the present Motion to Dismiss is only brought by the Federal Bureau of Prisons, T.J. Fikes, Dr. Ann Lavalley Wood, Dr. Lauren Bradel-Warlick, Ryan Zaudtke, Derek Drillings, Jobie Best, Tasha Scullard, Garret White, and Trevor Radzwicz. However, because Plaintiff is proceeding in forma pauperis, the undersigned will review Plaintiff's Amended Complaint as it relates to all of the Defendants. See 28 U.S.C. § 1915(e)(2). When a plaintiff is proceeding in forma pauperis under § 1915 "the court shall dismiss the case at any time if the court determines that the action . . . is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." It is, therefore, this Court's obligation to review Plaintiff's Amended Complaint as asserted against all Defendants. The Court also notes that, to the extent the individual Defendants' names are spelled differently from the names provided by Plaintiff in the Amended Complaint, the Court has corrected the names as reflected in their waivers of service.

Plaintiff specifically alleged that, after "a photocopy of an image from 'Hustler' magazine'" was confiscated from his person on November 1, 2019, he was required to meet with chief psychologist, Defendant Dr. Ann Lavalley Wood, wherein there was "no conversation about 'risk-relevant' behavior," but Plaintiff was warned that he was "not allowed to have pornography," and was directed to mail the remaining photographs to his home. (Id. at p. 5). Thereafter, on May 3, 2021, Plaintiff met again with Defendant Dr. Lavalley Wood and a second psychologist, Defendant Dr. Lauren Bradel-Warlick, after he was found in possession of "two photo albums." (Id.). Defendants Dr. Lavalley Wood and Dr. Warlick allegedly told Plaintiff that "[he] 'had too many photos'" and "that he needed to get rid of some." (Id.). They also allegedly "discouraged [Plaintiff] . . . from ordering specific photos that imitate children." (Id.). On January 7, 2022, Plaintiff met with Defendants Dr. Lavalley Wood and Dr. Warlick for a third time, after he was found in possession of another photo album. (Amended Complaint, [Docket No. 9], at p. 5). Plaintiff was allegedly informed at this meeting that he had been "'previously warned' and that [he] would be 'shipped' to another institution." (Id. at pp. 5-6). Plaintiff alleged that, despite explaining that he had received the pictures through and approved by the mailroom staff at FCI-Sandstone, and despite maintaining that he had been "diligently complying with their previous advisement to minimize the number of pictures [he] owned, and to not have any full pornographic pictures in [his] possession," Defendants Dr. Lavalley Wood and Dr. Warlick informed Plaintiff that they would "be recommending him to be 'shipped' to a SOMP yard anyway." (Id. at p. 6).

According to the Amended Complaint, Plaintiff then filed an informal resolution form on January 5, 2022, to prevent the transfer. (Id.). Defendant Dr. Lavalley Wood allegedly responded on January 7, 2022, "that the topic of 'risk-relevant' behavior had been discussed with [Plaintiff] on three separate occasions and that the decision to 'ship' [Plaintiff] would proceed." (Id.).

3

Plaintiff asserted that he then filed an appeal with the Warden's Office on or around January 8, 2022, providing that he had been "in total compliance with previous directives, [had] been a contributing member of the Sandstone community," and further advising that the transfer would violate his First and Fourteenth Amendment rights. (Amended Complaint, [Docket No. 9], at pp. 6-7). Warden T.J. Fikes responded to his appeal by "summarizing program statement 5324.10, Sex Offender Programs," and affirming the decision to transfer Plaintiff to a "SOMP institution." (Id.). Thereafter, on February 15, 2022, Plaintiff alleged that he was informed by Defendant Ryan Zaudtke that Plaintiff's "transfer to another institution was imminent," and as such, he was "given boxes to pack [his] things" to be submitted to the "R&D office" by the next morning. (Id. at p. 7).

It appears that Plaintiff then mailed the operative Amended Complaint, which was not received by the Court until February 22, 2022.[3] [Docket No. 9]. As noted above, the Amended Complaint essentially sought a temporary injunction to prevent his transfer from FCI-Sandstone by asserting that the transfer threatened to violate his constitutional rights to "freedom of expression" under the First Amendment and his right to equal protection under the Fourteenth Amendment. (Id. at p. 3). The Amended Complaint also requested appointment of legal counsel to assist him with this case. (Id. at pp. 7-8). Plaintiff separately filed a second Motion for Preliminary Injunction and a Motion to Appoint Counsel. [Docket No. 11].

---

[3] While not directly pertinent to the Court's ultimate recommendation that the Amended Complaint be dismissed, without prejudice, for failure to exhaust administrative remedies, the Court notes that Plaintiff's Amended Complaint also makes several passing references to the pornography at issue having been "previously approved by mailroom/R&D staff at FCI-Sandstone, [Defendant] Zaudtke"; to the confiscated photographs not being returned or not having received a property form for these items; and to no disciplinary report being generated following the meetings with Defendants Lavalley Wood and Warlick. (See Amended Complaint, [Docket No. 9]). Plaintiff also alleges that his legal paperwork was placed in moving boxes "making it near impossible for [Plaintiff] to effectively prosecute [his] case, especially during a lengthy transport to an unknown location." (Id. at p. 7).

On March 20, 2022, the Court then received a letter from Plaintiff, indicating that he had been transferred from FCI-Sandstone to the Federal Correctional Institution in Seagoville, Texas ("FCI-Seagoville"). [Docket No. 13].

On May 6, 2022, Judge Bowbeer granted Plaintiff's application to proceed in forma pauperis. (Report and Recommendation, [Docket No. 17], at p. 1). However, because Plaintiff had notified the Court of his transfer from FCI-Sandstone, Judge Bowbeer recommended denying as moot both Motions for Preliminary Injunction, [Docket Nos. 7, 11]. (Id. at p. 3). Judge Bowbeer also recommended denying Plaintiff's Motion for Appointment of Counsel, without prejudice. (Id. at p. 2). On May 27, 2022, the Honorable John R. Tunheim adopted Judge Bowbeer's Report and Recommendation.[4] [Docket No. 23].

On June 21, 2022, summonses for Defendants T.J. Fikes, Dr. Ann Lavalley Wood, Dr. Lauren Bradel-Warlick, Ryan Zaudtke, Derek Drillings, Jobie Best, Tasha Scullard, Garret White, and Trevor Radzwicz were returned executed setting their time to file an answer or otherwise respond to the Amended Complaint to August 15, 2022. [Docket No. 31]. After being granted two extensions to respond to Plaintiff's Amended Complaint, Defendants filed their present Motion to Dismiss on October 20, 2022, in lieu of filing an answer. [Docket No. 49].

## II.   Defendants' Motion to Dismiss

Defendants' Motion to Dismiss, [Docket No. 49], seeks an Order of this Court dismissing Plaintiff's Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). Defendants argue that the Amended Complaint should be dismissed because Plaintiff

---

[4] Plaintiff appealed the May 27, 2022, Order to the Eighth Circuit on June 27, 2022, which was pending at the time Defendants filed their Motion to Dismiss. [Docket No. 32]. However, the Eighth Circuit dismissed the appeal on October 21, 2022, finding that, because Plaintiff was transferred to another prison during the pendency of his action, which rendered his request for injunctive relief moot, the Eighth Circuit lacked jurisdiction. [Docket Nos. 53, 54]. Further, as to Plaintiff's denial of his motion for appointment of counsel, the Eighth Circuit found no abuse of discretion. [Docket No. 53].

failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act. (Defs.' Mem., [Docket No. 51], at pp. 11-12). Defendants further argue that, notwithstanding this procedural bar, Plaintiff's request for equitable relief under §1983 should be dismissed against the individual federal Defendants for lack of subject matter jurisdiction, and in the alternative, for failure to state a claim; Plaintiff has failed to plead an equal protection claim; and lastly, to the extent Plaintiff's Amended Complaint seeks to stop his transfer from FCI-Sandstone, this request is moot. (Id. at pp. 11-16).

For the reasons discussed below, the Court finds one of these arguments are sufficiently convincing to warrant dismissal of the Amended Complaint without prejudice: Plaintiff's failure to exhaust his administrative remedies as required by the Prison Reform Litigation Act.

A. Standard of Review

"To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice to state a claim to relief that is plausible on its face." Carton v. General Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010) (citations and internal quotation marks omitted). In addition to accepting all the factual allegations in the complaint as true, courts considering a Rule 12(b)(6) motion to dismiss draw all reasonable inferences in the plaintiff's favor, but courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Carton, 611 F.3d at 454 (citations omitted); see Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998); Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 664. When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See Iqbal, 556 U.S. at 678–81.

6

Likewise, a Court need not accept as true wholly conclusory allegations couched as facts. Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999); see Bediako v. Stein Mart, Inc., 354 F.3d 835, 840 (8th Cir. 2004).

While the Court is required to construe the content within Plaintiff's pleadings liberally as he is proceeding pro se, plaintiff is nevertheless bound by applicable procedural and substantive law. See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). "Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984). Additionally, "[t]hough pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (internal citations omitted) see, e.g., Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law.").

**B. Analysis**

As noted above, Defendants argue, among other things, that Plaintiff's Amended Complaint should be dismissed because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act.

The exhaustion of administrative remedies requirement is contained within the Prison Litigation Reform Act (hereinafter "PLRA"), which in relevant part states that "[n]o action shall be brought with respect to prisons conditions under section 1983 of this title, or any other Federal

7

law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

"The PLRA's exhaustion requirement is mandatory." Robley v. Anderson, No. 2-cv-4199 (JRT/RLE), 2004 WL 742089, at *2 (D. Minn. Mar. 4, 2004) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)). "Congress intended section 1997e(a) to curtail the ability of prisoners to bring frivolous and malicious lawsuits by forcing prisoners to exhaust all administrative remedies before brining suit in Federal court." Alexander v. Hawk, 159 F.3d 1321, 1324 (11th Cir. 1998). Moreover, the requirement to exhaust administrative remedies applies to all forms of relief sought. Booth v. Churner, 532 U.S. 731, 741 (2001).

"The benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subject to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Hammett v. Cofield, 681 F.3d 945, 947 (8th Cir. 2012) (quotations omitted) (quoting Jones v. Bock, 549 U.S. 199, 219 (2007)). "Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" Woodford v. Ngo, 548 U.S. 81, 89 (2006) (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)). Moreover, "the PLRA exhaustion requirement" mandates not only exhaustion but "proper exhaustion." (Id.). "An exhaustion requirement protects a correctional institution's authority by compelling inmates 'to give the agency a fair and full opportunity to adjudicate their claims.'" Hammett, 681 F.3d at 947 (quoting Woodford, 548 U.S. at 90).

Pursuant to the PLRA, failure to exhaust the available administrative remedies is an affirmative defense, with the burden of proof falling on the defendant asserting such a defense,

and it is not a matter of subject matter jurisdiction. Lenz v. Wade, 490 F.3d 991 993 n.2 (8th Cir. 2007) (citing Jones v. Bock, 549 U.S. 199 (2007)).

The present record before the Court provides that the BOP has a four-tiered administrative procedure for inmate grievances codified at 28 C.F.R. §§ 542.10-542.19. (Boldt Decl., [Docket No. 52], at ¶ 6). The first step is informal resolution with prison staff. (Id. at ¶ 7); see 28 C.F.R. § 542.13(a). Requests for Informal Resolution Forms ("BP-8") are not assigned a Remedy ID number and are not tracked. (Id.). If the inmate is unable to informally resolve his complaint, he may file a formal Request for Administrative Remedy ("BP-9") at the incarceration institution. (Boldt Decl., [Docket No. 52], at ¶ 7); see 28 C.F.R. § 542.14. If the inmate feels the response to his BP-9 is inadequate, he may appeal to the Regional Director within twenty (20) calendar days of the signed response by filing a Regional Office Administrative Remedy Appeal ("BP-10"). (Boldt Decl., [Docket No. 52], at ¶ 7]); see 28 C.F.R. § 542.15(a). Finally, if still dissatisfied, the inmate may appeal to the General Counsel, by filing a Central Office Administrative Remedy Appeal ("BP-11"). (Boldt Decl., [Docket No. 52], at ¶ 7]) An inmate may not raise in an appeal an issue he did not raise in a lower-level filing. (Boldt Decl., [Docket No. 52], at ¶ 7]); see 28 C.F.R. § 542.15(b)(2). An appeal to the General Counsel is the final administrative appeal. (Boldt Decl., [Docket No. 52], at ¶ 8]); see 28 C.F.R. § 542.15(a). An inmate has not exhausted his remedies until he has sought review at all levels of the process. (Boldt Decl., [Docket No. 52], at ¶ 8).

The record before the Court further provides that Plaintiff filed an informal resolution form on January 5, 2022, complaining about his proposed transfer from FCI-Sandstone. [Docket No. 1-1]. In response, Defendant Dr. Lavalley Wood provided that "the topic of collecting risk relevant

materials ha[d] been discussed [with] [Plaintiff] on 3 separate occasions. Each time the possibility of transfer for a correctional management plan was clearly discussed." (Id.).

On January 14, 2022, Plaintiff filed a Request for Administrative Remedy (BP-9 No. 1106968-F1) taking issue with his transfer. (Boldt Decl., [Docket No. 52], at ¶ 21; Exhibit B, [Docket No. 52-5], at p. 5). On January 18, 2022, as Plaintiff acknowledges, Defendant Warden T.J. Fikes responded, explaining among other things that, "[d]ue to [his] instant offense of Production of Child Pornography and the risk-relevant nature of the materials in [his] secure locker and on [his] person," Plaintiff and the confiscated materials were referred to the Chief Psychologist; Plaintiff was seen and educated about the risk of relevant behaviors on November 7, 2019, and May 3, 2021; despite previous interventions, psychology staff met with Plaintiff on January 5, 2022, because of certain photographs; and "[the Designation of Sentence Computation Center] referred Plaintiff to SOMP for review or application of a Correctional Management Plan." (Id. at ¶ 21; Exhibit D, [Docket No. 52-4], at p. 8).

Plaintiff then filed a Regional Office Administrative Remedy Appeal (BP-10 No. 1106968-R1) on January 28, 2022. (Boldt Decl., [Docket No. 52], at ¶ 22; Exhibit E, [Docket No. 52-5], at p. 4). The Regional Director denied the appeal, noting Defendant Warden Fikes' previous response. (Boldt Decl., [Docket No. 52], at ¶ 22; Exhibit E, [Docket No. 52-5], at p. 3). The Regional Director's response also provided that, through an independent review of Plaintiff's appeal, it was determined that the Chief Psychologist, in consultation with Correctional Services and Unit Team staff, recommended Plaintiff's referral to a SOMP institution because, among other things, his personal property included items that may be used as sexual paraphernalia and he was previously provided education about this issue on two prior occasions. (Boldt Decl., [Docket No. 52], at ¶ 22; Exhibit E, [Docket No. 52-5], at p. 3).

There is nothing in the record indicating that Plaintiff appealed the Regional Director's response by filing a Central Office Administrative Remedy Appeal (BP-11) to the General Counsel. (Boldt Decl. [Docket No. 52], at ¶ 23).

The Court finds that Defendants have shown that Plaintiff failed to properly exhaust his administrative remedies. At the time Plaintiff filed his habeas petition, Plaintiff had only filed an informal resolution form complaining of his proposed transfer, and therefore, the BOP's administrative procedure had not been complete at that point, as required by the PLRA. Indeed, by Plaintiff's own admission, he failed to wait for a response to each of his formal complaints before filing the present action. (Plf.'s Reply, [Docket No. 59], at p. 1). Further, based on the record before the Court, and as Plaintiff concedes, he did not file an appeal to the General Counsel, which is the last level within the BOP's four-tiered administrative procedure, and which is required to fully exhaust his administrative remedies.[5] (Id.).

While the Court may, in certain, limited situations, excuse a plaintiff's failure to exhaust his administrative remedies if it would be futile to do so, there are no circumstances here that exist upon which the Court could find that Plaintiff's attempt to exhaust his administrative remedies would be futile. See, e.g., Giannini v. Federal Bureau of Prisons, No. 08–1166 (JMR/JSM), 2010 WL 1427318, at *5 (D. Minn. Feb. 12, 2010); Anderson v. Outlaw, No. 2:11-cv-00013-JLH-BD, 2011 WL 1480048, at *1-2 (E.D. Ark. Mar. 30, 2011).

---

[5] To the extent any of Plaintiff's § 1983 claims relate to a Hustler image being confiscated from his person on November 1, 2019, Plaintiff has failed to properly exhaust his administrative remedies with respect to this claim as well. The record provides that, while Plaintiff filed a BP-9 (No. 1000090-F1) on December 12, 2019, complaining about the incident, it was rejected as procedurally premature and untimely. (Boldt Decl., [Docket No. 52], at ¶ 14). Plaintiff then re-submitted this complaint twice at the institution level—on December 31, 2019 (BP-9 No. 1000090-F2) and on January 6, 2020 (BP-9 No. 1000090-F3)—but both appeals were rejected as procedurally premature and untimely. (Id. at ¶¶ 16-17). Plaintiff then attempted to appeal by filing a BP-10 twice (the first one on January 21, 2020 (BP-10 No. 1000090-R1) and the second on February 18, 2020 (BP-10 No. 1000090-R2)), but both appeals were similarly rejected. (Id. at ¶¶ 18-19). There is nothing in the record indicating that Plaintiff resubmitted Administrative Remedy No. 1000090 at any level. (Id. at ¶ 20).

11

Therefore, because the Court finds that Plaintiff has failed to exhaust his administrative remedies, it does not reach the underlying merits of Plaintiff's § 1983 claims regarding his transfer from FCI-Sandstone to a SOMP institution based on possession of certain photographs, as raised in the Amended Complaint.[6]

Accordingly, to the extent Defendants' Motion to Dismiss seeks an Order of this Court dismissing Plaintiff's § 1983 claims of violations to his rights under the First and Eighth Amendment as alleged against Defendants, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 49], be **GRANTED**, and that Plaintiff's claims of First and Eighth Amendment violations be **DISMISSED** without prejudice.

### III.   Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendants' Motion to Dismiss, [Docket No. 49], be **GRANTED**, as set forth herein; and

2. Plaintiff's Amended Complaint be **DISMISSED** in its entirety, without prejudice.

Dated: February 1, 2023                             s/Leo I. Brisbois
                                                    Hon. Leo I. Brisbois
                                                    U.S. MAGISTRATE JUDGE

---

[6] Even if the Court were to excuse Plaintiff's failure to exhaust his administrative remedies, Plaintiff's § 1983 claims as alleged against the individual defendants are improper because Defendants are federal employees. "By its terms, § 1983 applies only to state actors and thus cannot found a claim against federal officials or agencies." Solliday v. Nalley, No. 11-cv-2350 (MJD/JJG), 2012 U.S. Dist. LEXIS 126008, at *1-2 n. 1 (D. Minn. July 27, 2012) (Graham, M.J.); see also Davis v. United States, 439 F.2d 1118, 1119 (8th Cir. 1971) (per curiam) ("By its plain language [Section 1983] does not authorize redress against the United States."). Furthermore, to the extent Plaintiff challenges the BOP's decision to transfer him from FCI-Sandstone, Courts in this District have repeatedly held that the BOP has exclusive authority to determine the placement of prisoners under 18 U.S.C. § 3624(c)(2), and such placement questions are not reviewable. See, e.g., Machipiness v. B. Birkholz, No. 21-CV-1668 (JRT/ECW), 2021 WL 8363203, at *6 (D. Minn. Dec. 6, 2021), report and recommendation adopted sub nom., 2022 WL 1284772 (D. Minn. Apr. 29, 2022); see also United States v. Vang, No. 16-CR-277 (DWF/KMM), 2020 WL 4704875, at *2 (D. Minn. Aug. 13, 2020). Therefore, for these additional reasons, the Court would recommend that Defendants' Motion to Dismiss, [Docket No. 49], be **GRANTED**, without prejudice.

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).